Mr. Kelly. Thank you, Your Honor, and good morning, Your Honors. This case involves the issue of claim preclusion. This Court has decided that in patent cases, the cause of action in a claim preclusion case is patent infringement. Now patent infringement has two operative parts. One is the accused product. The other is the claim or claims that the product is accused of infringing. Here, the District Court relied upon this Court's decision in aspects. However, the fact pattern in aspects is completely different. SENJU succeeded in the first case on the issue of infringement. SENJU failed to succeed on the issue of validity. The defense proffered by APOTEX was successful. Speaking of facts, we sort of know the background. I don't think you need to go over that. But with respect to where we stand right now, has this generic been authorized? This generic was approved, I believe, in August of 2011, Your Honor. And has it lodged? No, it has not, Your Honor. Okay. Is there any injunction against it lodging? No, Your Honor. There's been no injunction. The 30-month stay expired in June when the Court issued its order. But no later than July of 2010, APOTEX has had some FDA difficulties, which I believe have interfered with its launching of the product initially. And you're not arguing, are you, that if, in fact, you were allowed to go forward with respect to this new claim that came out of re-exam, that that would give you any right to another 30-month stay? Absolutely not. Because the claim here doesn't relate back to the original claims, our cause of action didn't arise until the re-examination certificate was issued in early October. And it wouldn't match up with what was in the Orange Book in any event, correct? Well, the patent is listed in the Orange Book, but it would not apply in this case. Because it's a new claim? Because it's a whole new game. And we have not asserted that... You haven't listed this one in the Orange Book? The re-examination patent, which is in the Orange Book, Your Honor... Doesn't that trigger the concern that Judge O'Malley is pointing to? In point of fact, we have not... Our view is that we're entitled... Since we lost the first case on infringement, that we're not entitled by statute to a second... Second 30-month stay. I mean, that was... The paroxetine case caused Congress to change that. So we're only entitled to one. We've had our one 30-month stay. What the issue is, we're looking forward. We don't want Apotex to launch going forward. It's a declaratory judgment for an injunction to prevent future infringement. I'm having a little trouble following those relationships. Because you've had a one 30-month stay based on your original patent. Correct. But now you're arguing you have a new patent. That's correct, Your Honor. But then you're saying the new patent is blocked by the earlier patent's 30-month stay. I don't understand that. What is your position on this? Well, it is blocked because the statute authorizing the 30-month stay was changed a number of years ago. I forget exactly how long, to allow only one 30-month stay per NDA. Right. So I've taken you down a road that probably is a little bit off. So what you're saying is that if you want to stop them from launching, you would have to either get a preliminary injunction or a permanent injunction based on your new lawsuit. That's correct, Your Honor. Assuming your new lawsuit gets to go forward. That's correct, Your Honor. That's what the relief is that we've requested. Okay. So going back to your argument, you argue that the facts are different here than they were in Aspect. But there's really broad language in that case. Are we supposed to ignore that language, or do you think that language was dicta? I mean, how do we get around that language? Well, I think there are two things, Your Honor. I think broad language is, and I think can be treated as dicta, but it is qualified immediately after they say that language. They cite to the Hoffman case. It's Hoffman v. Wiesner, I believe. Hoffman was the same set of facts. Patentee lost on the first case on infringement. Came back after a re-exam with the second case. What the Hoffman court said at the part cited by this court, 927 at 73. 927 at 73. Thus, claims added or amended in a re-examination proceeding will necessarily be narrower because Section 305 bars claims that enlarge the scope of the original claims. Therefore, no device can infringe the narrower claims emerging from a re-examination that would not have infringed the original claims as well. Here, we've got the opposite situation. The court was not addressing a situation where you've got a success on infringement on the broader claims, but a loss on the defense of invalidity. And we come now in with narrower claims, which the patent office says are patentable over the very same prior art. And so it's a different fact situation. And the court also in Hoffman went on to say, because the 860 patents claims were narrowed by the addition of claims 4 to 7, and because it's already been concluded that any prior action for infringement of the original patent has been adjudicated in favor of the defendant, Wisner cannot not be deemed guilty of infringing upon this new narrower patent. That's what this court cited to in aspects. So the court in aspects, when you read it in context, is not saying that in no and absolutely circumstances can a re-examination patent ever give rise to a new cause of action. It's saying that where you've lost the first case on infringement, you don't get a new cause of action. The situation with a re-examination patent is similar to a narrowed reissue. In a narrowed reissue, if you lost the first case on the broader claims, you're not going to win on the narrower claims. The issue there, like here should be, are the claims substantial the same? That's what Section 252 says, which is referenced by the re-examination statute. So the question you have to look at is there's two questions to decide claim preclusion. Is the product the same? Here we're not disputing that. Is the claim substantially the same? We are disputing that. We're disputing that because the first claim was held invalid but infringed, and now we've gone back to the Patent Office, as Congress intends you to be able to do, to correct that mistake in the original patent. You've got narrower claims, right? Your Honor, that's absolutely correct, and we have to prove infringement of those narrower claims in the new case. We don't get the benefit of that infringement judgment because the claims have changed. I mean we had a very easy time proving infringement. If you've looked at those original claims as interpreted by the Court, they were this broad. We now have claims this broad. We have a new infringement case that we have to put on. We're not saying we get heads we win, tails we lose. We're saying that both of this has to go back because it's substantially new claims, so you have a new cause of action. The cause of action is patent infringement. It sends you as the burden of proving that infringement of these claims. Let me ask you a procedural question, and maybe I'm just too much of a procedural nerd. But as I understand it, the district court never entered a final judgment on the original claims until December, correct? Correct, Your Honor. And some of the original claims as to which she entered a final judgment at that point in time no longer existed. Is that right? That's correct, Your Honor. Why was the case as to those claims not moved before a final judgment was entered? We advised her the patent office decision back in August. I think she just went through since she found them invalid, she entered the judgment. I don't think that procedurally maybe she shouldn't have, but I think the fact is that she had made a finding in June of 2010 that they were invalid, and she just incorporated into her judgment that she issued in December of 2012. Remember, the only thing that we had asked her to look at was Claim 7, which is not the subject. I know, but she reopened the entire record and never entered final judgment as to the other claims. She reopened the record for Claim 7 only, Your Honor, to look at one issue, and that is the question of whether it was… She opened the judgment and said what we're going to do is look at Claim 7. So my question is if we were to conclude that there was no case or controversy as to certain of the claims, the claims that were canceled as of the time she entered final judgment, and the only claim as to which a case or controversy remained when she entered final judgment was Claim 7, does that impact the analysis? I don't think so, because the Patent Office in October of 2011 issued a judgment that the original claims were, in fact, canceled at that point. I mean, basically, the Patent Office had already, before we filed suit, had already canceled the original… Right, but Claim 7 is a different claim than the amended Claim 6, correct? Correct. Very different claim, Your Honor, and that claim, of course, this court affirmed the judge's opinion that it was invalid. All right, so in that case, if we were to conclude that, what we would have to say is that your friend on the other side, who argues that it's really the patent, that once you suit on the patent, it doesn't matter. You're done. You get one bite at the apple. We'd have to accept that broad proposition, correct? No, Your Honor. Your Honor, the fact is there are a number of cases, which you've shown, narrowing reissues, where you, in fact, have had courts say it's not. No, I mean, we'd have to accept that broad proposition to rule against you. You'd have to accept the proposition that the cause of action is not made up of the product and the claims, but simply the patent. And that is contrary to the accepted practice involving reissues, where this happens, has happened. This is a unique case in that we haven't seen anyone who's actually gone, lost the district court, and been able to go back to the patent office and fix it. Why don't you seek to amend your original claim rather than file a new lawsuit? I guess you're saying amend the… The original cause of action. At that point, we viewed the case as over, Your Honor. The claims had been basically out of the case. We felt that at that point, since procedurally she had already had to reopen the record and was in the process of deciding Claim 7, that the appropriate thing to do was we now had a reexamination certificate with totally different claims. But you didn't give her the chance to do that. Well, actually, when we told her in August, October, no, September of 2011, we did give her a chance had she wanted to do that. But I think the issue… Well, you told her you had a new claim, but you didn't say, can we amend our current action and now reopen the record for purposes of… We did not do that, Your Honor, in October of 2011. That's correct. But it would have been way, way late in the case because, again, the defendant, Apotex, is entitled to force us to prove infringement again. It would have required a new trial. Their argument is that you split your claim. Are we done? I think we'll figure out if there are any procedural flaws that we think need to be remedied. And let's concentrate on the substance, which is delicate enough. Okay. We'll save you full rebuttal time, Mr. Kelly. Thank you, Your Honors. Mr. Paulson. May it please the Court. Good morning. The question here is whether these two cases involve the same cause of action. And this Court's precedent teaches that the primary consideration in determining whether the same cause of action is involved is the accused product. The accused product here is the product of Apotex's ANDA. In fact, the second suit is based on no further action than Apotex took for the first suit, which is filing its ANDA with the FDA. Don't you see a distinction between a case in which there was a loss on infringement versus a case in which the original claim was deemed invalid because it was too broad? I see no difference at all, and I'll explain why. Also, what goes into the cause of action is whether the patent is involved and whether that's the same patent because each patent gives rise to a cause of action. What they are saying is that they get a second shot because now they think that our invalidity defense is weaker this time around, so they should get to go again against us with the reexamined claims. When you say each patent gives rise to a cause of action, so if you sue on a patent, you can never assert a different claim under that patent against a different product? A different product, yes. The same product, no, because that's the Hemphill case. That is a classic case of claim splitting. What they have done is they had a patent right, the 045 patent right that they initially sued on. They lost, and they went and they got it reexamined. Now, that reexamination gave them no further rights, we know from aspects, gave them no further rights against infringement that they didn't have the first time around. I'm having difficulty with that because you've got a narrower claim that has substantially more limitations. Correct. Whether you think it would be invalid otherwise is a different question, but under the court's original invalidity analysis, there's no doubt that it's not the same claim. It's a narrower claim, yes. Don't we say repeatedly in our case law that it's the claim that defines the scope of the right to exclude? Well, the patent defines this. Let me approach this a different way. Think of a Venn diagram with the original patent as being a circle. The reexamined claims by statute can be no broader. So the reexamined claims are in that circle. They might touch it, or they might be a little dot in there, or they may be somewhere, but they're in that circle. So when statute brings suit number two, what it is doing is it is culling certain rights out of that same bundle of rights. You're arguing that those claims are within the circle. They are within the circle. It's a smaller circle because they are narrower claims, but they're still within that bigger circle. Precisely, Judge Flaker. That's the circle that they had to start with. It wasn't my idea. It was my law clerk's idea. Very good. So it is a smaller circle, and so it's no different than suing same defendant and same product, claim one in one suit, claim two in another suit. It's the same issue of claim splitting. That's the Hemphill case. Why did Aztecs go to such great lengths to compare the new claims to the old claims to see if they were functionally the same? Why did who? Why did the court in Aztecs go to such great lengths to compare the claims and to do an analysis of the claims to see if they were functionally the same? Why didn't they just say it doesn't matter what the claim says? If it comes out of re-exam by definition, that's the end of the inquiry because the patent is what you sue on. My answer is I don't know. I believe the way we read, we think the fairest reading of Aztecs is that the holding is that a re-examination, because it has to be narrower, gives you no further rights against infringement that you didn't have the first time around. Again, the Venn diagram, whether it's a dot in there or whether it's a circle that's almost as big as the first circle, even butting up against it, it doesn't matter. But I can understand if you're talking about if you don't infringe the broader claim, then there's no way you're going to infringe the narrower claim. Okay. But that's different than saying if the broader claim is invalid. Invalidity, what they are essentially saying is that they're entitled to take a second shot because now maybe their claims won't be held invalid. But that is not what makes up the cause of action. The cause of action is derived from the facts that give rise to the claim. The operative facts in a patent case are the accused product and the patent. And whether a defense is better or there's a different defense or a stronger – they think a stronger, weaker defense doesn't matter. The defense – invalidity is merely a defense to the claim itself. So you don't look at defenses and how they might change from one to the other in determining whether two causes of action are the same. Is that why the fact that they won on infringement the first time? Right. But they lost on validity. Right. If they have valid claims now, why are they precluded from pushing their infringement case? Well, they're – Renewing their infringement case. Well, they're free to renew that against anyone else. But they are not free to renew that against Apotex. But they didn't lose on infringement the first time. Judge, res judicata doesn't matter whether you win or lose. It's what you sue on. It's the rights you have and what you decide to bring. How do we say that that right – And you can't split those between two different lawsuits. But that right didn't exist. That new claim didn't exist. But the rights were subsumed in the initial claim. They could have – You said that in your brief that they could have asserted this narrower claim, but – Let me explain. There are basic principles of law that says you can't import all those limitations into that broad claim. If they had tried to claim it narrowly, you would have laughed at them. Well, they had the right to sue on that. Now, you asked whether – The right to sue on a claim that had never been issued? No, no, no. That was – the rights in those claims were subsumed in the rights that they had to begin with. Now, they could have. They made a strategic choice. Their original patent had exceedingly broad claims. It was any amount of gadaflaxus in, any amount of EDTA in solution. In fact, they were so broad that they asked the judge for a narrowing construction, which they received. But in any event, they made a decision to go to trial with only those broad claims. Underlying your argument is the notion that the narrow claims were implicitly in the broad claims. Correct. Is that what you're arguing? It's the same invention. It's just variations on the same invention. They could have. You asked Mr. Kelly whether – why didn't they ask – tell Judge Robinson to stay or amend. We have very liberal rules of amendment, joinder. We tolerate directions in trials. We have a system that's designed to get at the truth and to resolve disputes between the parties. They could have asked Judge – they could have actually told her that they were going for reexamination, and they could have asked her to stay that first suit so that all of their rights or all of their claims, whatever claims, reexamined claims they want to bring, could have been determined in that first lawsuit. They didn't. But when they went for reexamination, aspects had already issued, the district court decision and aspects had already issued. So they knew, or at least they were on notice that a district court had already held that a reexamination doesn't give you suit two against the same defendant and the same product. That was a calculated choice that they made. They chose, instead of asking Judge Robinson in the first case to stay, to hold everything, saying, wait, we're getting reexamined claims, things might change. Instead, they did not tell her. They took their chance, and now they're trying to assert those claims against us in a second lawsuit. Well, the interest of repose, finality, and whatnot, we draw the line there. At least the court has wisely drawn the line there. And I say wisely because if they would be permitted to bring a second suit here, what you encourage then is patentees to draft the broadest possible claims, go to verdict against those claims, and if you lose, well, they can run back to the patent office and shave a little bit off the claims and try again against the same defendant and the same product. Does it matter that the product doesn't actually exist, that this is just a hypothetical product? Well, the fact is that it's the same product. That's the thing, and it's a stand-in for the product in these cases. I understand, but it's not really a product that's out there on the market right now. No, it's not, but the and is the infringing mechanism, and that hasn't changed. So what you'd encourage is that they'd lose the first case, go back to the patent office, get narrower claims, assert them against the same defendants and the same product. If they lose there, go back again until the district judges are not deciding any controversies between the parties, and they're not helping the patentee define the scope of their claims that might survive. What do we do about the fact, though, that the district court's decision was premised on the assumption that they could have asserted the narrower claim in the first lawsuit, which we all know they couldn't have? Even if you say that we should have this bigger theory and look at it from a different perspective, that's not the perspective that the district court was looking at. I think we're on the same perspective that the district court is using, and you review judgments. You don't review each word of the opinion. So the district court had it right. The district court said that, followed aspects and said that the second, the reexamination gives you no extra right against infringement that you didn't have the first time around. So the district court had it absolutely right in this case. Anything else for Mr. Bolson? No questions. No questions for Mr. Bolson. Thank you, Your Honors. Your Honors, I would like to clarify one thing. This suit is not on the end. That ship sailed with the first suit. This is on Apotex's threat to launch the product, which is a different cause of action. It doesn't rise under 271E2. We're actually asking for declaratory judgment against the product. So the relief we would get is different. Well, the ANDA presupposes the future delivery of a product by definition. Correct. The first suit, the relief would have been an order against the FDA to not approve the ANDA. That's a remedy issue. But in that case, we were filing on the technical act of infringement. Here we're acting to say we want a prophylactic relief. We want a declaratory judgment that Apotex shouldn't launch until the patent expires and an injunction to that effect. But it's the same product. It's the same product, Your Honor. It's just I want to clear that it's not an ANDA case this time around. Context is not an ANDA case. Okay. One of the things that was argued here is he talked about the product and the patent. But even Judge Robinson herself, in her opinion, said correctly in determining whether the two patent suits are actually the same cause of action. She said the federal circuits look primarily, one, at whether the accused products are essentially the same, and whether the patent claims being asserted are the same or substantially the same. So she understood what she was to do, but for some reason didn't do it. Why didn't you speak to say that the action is pending re-exam? Well, we were looking at Claim 7, Your Honor. And we were looking at a company that had an approved ANDA and could launch. And we thought that we could win on Claim 7. And that that would then allow us to get the injunction against Apotex. But wasn't that a calculated risk? You know, quite frankly, we didn't think that we had the ability to bring this new claim into that case. This was a whole new claim. It requires a whole new presentation of evidence. It was a new claim only in the sense that it was a narrower version of the earlier claim. But it still is. Isn't it true that the earlier broad claim subsumed this narrower claim? That's correct, but that's not the test, Your Honor. The test under 252 is substantial similarity. And substantial similarity doesn't exist here. If it was substantially similar, the Patent Office wouldn't have issued it. And indeed, even the District Court, in a subsequent decision, acknowledged that she never issued any decision on the merits on a claim which had the limitation on EDTA that's in the present claim. If I have a glass of water and I pour half of it or a third of it into another glass, isn't there substantial similarity between the contents of the two glasses? You're doing the analysis that's necessary to reach that conclusion. That's the analysis that has to be done here. Substantial similarity of the claims. If you take that glass of water and you put some of it in another glass, and now I put Tang with it... No, we didn't add anything. Well, we did. Our claims have had substantial things added, just like my Tang going into your water. You know, in Acumet... I don't like Tang. I don't either. Okay. But we're both old enough to remember. How do you feel about bourbon? Very good. All right. We'll meet afterwards. Okay. You made your point. Acumet, you know, the Acumet court made it very clear that what could have happened or might have happened in the original prosecution isn't what's at hand. It's what was actually done. Acumet had... Acumet is not that different from this case in the sense that there were two products Stryker had, short nail, long nail, to simplify. Stryker... Acumet went to trial on the short nail, later brought a separate cause of action on the long nail, and of course Stryker said, wait a minute, that's substantially the same. And this court said, no, we've got to look at that product, and it's substantially different. So they didn't split their cause of action. Maybe they could have brought it in the first case. They could have amended in the first case to add that accused product. They didn't. Instead, they did what we did. They brought a separate cause of action, a separate action. So I think that, you know, has happened. So it's not unusual for things like this to go on. What is unusual is for a patentee to lose on validity to be able to go to the patent office and fix it. This has happened in re-exams. As we cited, there's three cases in our brief. One out of the Tenth Circuit, where Judge Jack Miller, late of this court, wrote, sitting by designation, wrote that opinion, and looked and said, look, yes, you lost on validity the first time, patentee. What's your answer to the position that, yes, you can sue anyone else on your re-examined claim, but as between these parties, for which there's a final judgment that embraces the re-examined claim, it's precluded? Your Honor, I looked at precedent, and the precedent on the appellate levels of Tenth Circuit, Judge Miller, sitting by designation, looked and said, yes, you can if the claims are substantially different, and if you succeeded on the infringement question. But was the first lawsuit still ongoing when the new claim was issued in that case? I don't believe it was, Your Honor. There's nothing in the record that I can see. Maybe the solution to this case is for us to hire you to sue the PTO for creating the problem. Somehow I think I'm on their side on this one. Any more questions other than that one? Any more questions? I thank you for your patience this morning, and have a good day, and a good glass of bourbon. Not yet. Not until the cases are over.